# OCTOBER TERM, 1878.

---

JAMES HAMILTON AND ALBERT B. DUNNING v. GEORGE H. SMITH.

*Malicious prosecution—Probable cause—Malice—Advice of counsel.*

An action for malicious prosecution will not lie unless defendant acted from malicious motives and without probable cause, and the prosecution failed.

The burden of proving the want of probable cause is on the plaintiff in an action for malicious prosecution.

"Probable cause" for prosecution depends on the circumstances of the case and exists where the generality of business men of ordinary care, prudence and discretion would prosecute under the same conditions; and this is so whether the prosecutor's motive is good or bad. But it cannot rest on mere conjecture, nor on an unreasonable interpretation of appearances, especially if the accuser knew of facts that would have explained them, or knew that they were contrived by conspiracy, or other corrupt means, to give a colorable basis for prosecution, or to entrap the accused into admitting guilt of other offenses.

The existence of "probable case" for an alleged malicious prosecution depends on the state of facts found by the jury under proper instructions as to the rule of law to be applied according as they find one state of facts or another.

The question of malice in an action for malicious prosecution is for the jury alone.

Malice, in cases of malicious prosecution, may lie only in its being willful, wanton or reckless, or against the accuser's sense of duty, and for ends that he is bound to know are wrong and against public policy.

Malice may be proved by direct or circumstantial evidence, and is generally inferable from the want of probable cause, though such want can never be presumed from malice.

Damages for malicious prosecution may embrace the plaintiff's expense in protecting himself, his loss of time, deprivation of

liberty and the society of his family, the injury to his fame and his personal mortification.

An action for malicious prosecution is now an action on the case; and as matter of pleading a charge of conspiracy in the declaration is mere surplusage and is only matter of aggravation; conspiracy could be proved even if not charged.

In conspiracy to commit an actionable wrong, everything said, done or written by any one of the conspirators in furtherance of the common purpose is a relevant fact against each; but such facts occurring before the conspiracy are not relevant as against any but those who accomplish them or are present when they are accomplished; and they cannot be admitted as against the rest unless there is *prima facie* ground for believing in the existence of a conspiracy.

Where an attorney and client conspire to institute a malicious prosecution, the latter cannot justify himself by the other's advice.

Error to St. Joseph. Submitted June 6 and 7. Decided October 9.

MALICIOUS PROSECUTION. Defendants bring error.

*Brown, Howard & Roos* for plaintiffs in error. In an action for malicious prosecution the jury should be instructed as to the law upon each of the several phases of the facts, 1 Am. Lead. Cas., 218; *Bourne v. Stout*, 62 Ill., 261; *Driggs v. Burton*, 44 Vt., 124; *Cole v. Curtis*, 16 Minn., 182; *Stone v. Crocker*, 24 Pick., 81; *Travis v. Smith*, 1 Penn. St., 234; *Hill v. Palm*, 38 Mo., 13; 1 Hilliard on Torts, 244-8; compensation for remote and accidental consequences are not within the scope of the law in any action, *Knight v. Wilcox*, 14 N. Y., 413; *Haynes v. Sinclair*, 23 Vt., 108; Sedgwick on Damages, 89; reliance in good faith on the advice of counsel is a defence against an action for malicious prosecution, *Wicker v. Hotchkiss*, 62 Ill., 107; *Burgett v. Burgett*, 43 Ind., 78; *Potter v. Seale*, 8 Cal., 217; *Ross v. Innis*, 26 Ill., 259; *Williams v. Vanmeter*, 8 Mo., 339; *Eastman v. Keasor*, 44 N. H., 518; *Josselyn v. McAllister*, 22 Mich., 300; *Stanton v. Hart*, 27 Mich., 542; the fact that a man has been held for trial on examination by a magistrate is *prima facie* evidence of probable cause,

*Payson v. Caswell*, 22 Me., 212; *Whitham v. Gowen*, 14 Me., 362.

*H. H. Riley* and *T. C. Carpenter* for defendants in error. The action for malicious prosecution lies for damage to the person, reputation or property, *Savil v. Roberts*, 1 Salk., 13; *Potts v. Imlay*, 1 South. (N. J.), 330; *Munns v. Dupont*, 1 Am. Lead. Cas., 207; if a crime is charged on which arrest is made and action brought, an action for malicious prosecution is sustainable *per se* on showing a want of probable cause, *Frierson v. Hewitt*, 2 Hill (S. C.), 499; the principles of the action are stated in *Farmer v. Darling*, 4 Burr., 1971; "probable cause" is a reasonable ground of suspicion supported by circumstances strong enough to warrant a cautious man in believing the accused guilty of the offense with which he is charged, *Munns v. Dupont*, 3 Wash., 31; *Broad v. Ham*, 5 Bing. N. C., 722; *Braveboy v. Cockfield*, 2 McMull. (S. C.), 270; *Sims v. M'Lendon*, 3 Strobh., 557; *Ulmer v. Leland*, 1 Me., 135; there must be actual belief in his guilt and reasonable ground for it, *Burlingame v. Burlingame*, 8 Cow., 141; *Merriam v. Mitchell*, 13 Me., 439; *Raulston v. Jackson*, 1 Sneed, 132; *Faris v. Starke*, 3 B. Mon., 4; *Gallaway v. Burr*, 32 Mich., 332; the prosecutor's mere belief is no evidence of probable cause, *Winebiddle v. Porterfield*, 9 Penn. St., 137; *Lawrence v. Lanning*, 4 Port. (Ind.), 196; *Jacks v. Simpson*, 13 Ill., 701.

GRAVES, J. This writ of error is brought to reverse a judgment for $3500 rendered in Smith's favor on a charge of malicious prosecution. Some preliminary explanation is requisite. In the summer of 1876 the wife of Hamilton instituted her suit by bill against him for a divorce, and he employed the defendant Dunning, a solicitor, to make defense for him. In due season Dunning put in Hamilton's answer and it contained a charge of adultery by Mrs. Hamilton with Smith. But shortly before the answer a sworn statement of one Whittenberg

was obtained to the effect that Smith had recently committed the offense against nature, and Hamilton made complaint before a justice therefor against Smith, who was consequently arrested upon such charge. On being taken before the justice he asserted his innocence, but waived examination and was forthwith committed for want of bail to answer in the circuit court. After several months imprisonment he was informed against for the offense preferred by Hamilton's complaint and was put upon trial. No evidence was adduced against him and he received an acquittal from the jury.

This action was brought for such prosecution and imprisonment. The declaration contained two counts.

The first charged in substance and apart from technical terms and additions that the proceedings were contrived and brought about by a conspiracy between Hamilton and Dunning and with the final design of making use of such proceedings, and of the control they would give and the facilities they would afford to extort from Smith a confession on oath of the adultery charged in Hamilton's answer and in such shape as to be susceptible of use as evidence in support of the charge.

The second count omitted the allegation of conspiracy and some matters of explanation and simply complained of Hamilton and Dunning as joint wrong-doers in the transaction.

The plaintiffs in error were not entitled to have the jury charged in the terms of any of their requests. But it appears obvious that the instructions given were not suitable or sufficient.

To maintain a suit for malicious prosecution three distinct propositions must be established:

*First.* The fact of the alleged prosecution and that it has come to a legal termination in the plaintiff's favor.

*Second.* That the defendant had not probable cause.

*Third.* That he acted from malicious motives.

No question has arisen respecting the existence of the prosecution or of its having ended, and in the acquittal of

the plaintiff. Hence nothing need be said in regard to the first proposition.

As to the second, when that is controverted as in this case, it is incumbent on the plaintiff to make out that the defendant did not have probable cause, and in order that the controversy upon the question may be intelligently disposed of, an understanding of what is probable cause is indispensible. Unless the jury are informed and know, they cannot tell whether there was such cause or not. No standard is afforded with which to compare the state of facts ascertained to have existed.

As lawful grounds may exist to justify a party in setting the criminal law in motion, although it turn out that no offense has been committed, or if committed, not by the accused, so it follows that what is probable cause is not contingent upon the fact of the guilt of the accused. This is evident. The law itself ordains that prosecution shall be the method for solving the question whether one has committed crime or not, and as prosecution is therefore a necessary antecedent, the law would violate common sense and destroy itself if it were to say that the act of prosecuting must yet wait for knowledge of the guilt of the suspected party.

In case the information possessed is believed and is such and from such sources that the generality of business men of ordinary "care, prudence and discretion" would prosecute upon it under the same conditions, there is probable cause. *Gallaway v. Burr*, 32 Mich., 332; *Fagnan v. Knox*, 66 N. Y., 525; *Heyne v. Blair*, 62 N. Y., 19; *Bacon v. Towne*, 4 Cush., 217; *Wheeler v. Nesbitt*, 24 How., 544. And if it appear that the defendant had probable cause the action must fail, no matter how wicked or flagitious may have been the real motive. The circumstances having been such as would have justified a man of rectitude in moving in obedience to his duty as a citizen, the law will not inquire whether he who did move was governed by base motives or not. The act in itself being proper, the bad

purpose in the mind is left to the penalties of the moral law.

But a man has no right to set the criminal law in motion against another upon mere conjecture that he has committed crime. And when neither the conduct of the accused apparent to the accuser, nor the information of the latter, are sufficient to warrant the just suspicion before pointed out, there can be no justification (*Churchill v. Siggers*, 3 El. & Bl., 937) and a person cannot shield himself from liability by claiming that appearances afforded probable cause, if the fact be that the circumstances and information were falsely and unreasonably construed or applied. *Fitzjohn v. Mackinder*, 9 C. B. (N. S.), 505. Much less can he do so if he was aware that the accused was in fact guiltless; or was aware of matters which would have explained the unfavorable appearances and exculpated the accused and did not divulge them; or was privy to the fact that in order to give a colorable basis for prosecution trickery and fabrications were resorted to and appearances of suspicion raised by conspiracy or other corrupt means; or if the chief appearances of suspicion and the prosecution were due to a corrupt plot by the prosecutor, or by him and another, and were brought about pursuant to such plot to the end of being used as means to coerce the accused to swear that improper relations existed between him and the prosecutor's wife.

Enough has probably been said for the purpose of this case upon what is "probable cause." So much depends upon the identical circumstances of the individual case that there is difficulty in explaining by instances.

A point of great importance remains however to be noticed. It is the province of the jury to ascertain what state of facts exists, and it is the province of the judge to decide whether that state of facts constitutes probable cause, and the law intends that these functions shall be kept distinct. But as the law appropriate to

the facts cannot be laid down unequivocally until it is ascertained what the facts are, it is found necessary where they are in dispute to submit the whole subject to the jury under proper instructions as to the rule of law to be applied according as they find one state of facts or another. The law belonging to any state of facts subject to be found being given to them in advance, they are enabled on coming to an agreement as to what is the true state of facts, to apply the law delivered to them as belonging thereto, and to formulate the result.

Here the facts were in dispute, but the judge failed to give proper attention to this distinction, and also neglected to define or explain probable cause and the jury returned a general verdict. In such a state of things it is impossible to find out what combination of facts the jury ascertained, or whether they had any intelligent idea at all of this feature of the case. *Bulkeley v. Keteltas*, 4 Sandf., 450; *Stone v. Crocker*, 24 Pick., 81; *Hinton v. Heather*, 14 M. & W., 131; *Panton v. Williams*, 2 Q. B., 169; *Heslop v. Chapman*, 22 E. L. and E., 296; *Fagnan v. Knox, supra*, and other cases. *Stone v. Crocker* is very instructive.

The proposition that the prosecution must have been malicious requires but few words.

If in any case the jury under proper instructions had reached the conclusion that probable cause existed, or are led to think, in view of all the circumstances, that the want of it has not been made out, the case is at an end.

However base the proceeding may have been the action must fail. A necessary ingredient of the cause of action charged is wanting. But supposing the want of probable cause to be made out, it is then requisite to ascertain whether there was malice. For if it does not appear that the prosecution was malicious as well as without probable cause, again the action must fail, and it is possible, though very unusual, for a prosecution to be commenced or pursued without probable cause and

at the same time without malice, *Vanderbilt v. Mathis*, 5 Duer, 304. The question of malice unlike that of probable cause is exclusively for the jury. The term is not used in this form of action in the sense often ascribed to it. It is quite comprehensive and .includes many phases of wrong motives and conduct. There may be ill will, malevolence, spite, a spirit of revenge, or purpose to injure without cause, but it is not necessary that there should be. If the prosecution is willful, wanton or reckless, or against the prosecutor's sense of duty and right, or for ends he knows or is bound to know are wrong and against the dictates of public policy, it is malicious. And in the present case, supposing it to be found that the prosecution was without probable cause and that the purpose in prosecuting was to trump up or extort something for the defense in the action for divorce, rather than to uphold and honestly and in good faith enforce the criminal law, then the prosecution was malicious.

Malice may be proved by direct evidence or it may be inferred from circumstances, and generally it may be inferred from the want of probable cause, though the latter can never be presumed or inferred from the most express malice.

The facts disclosed by the record are sufficient to excuse any special discussion of this part of the case; because if want of probable cause is made out it is hardly possible that any difficulty can occur in regard to the question of malice. See *Wiggin v. Coffin*, 3 Story C. C., 1, and note to *Munns v. Dupont*, 1 Am. Lead. Cas., 200; *Stevens v. Midland Counties Rw. Co.*, 10 Exch., 356; *Kerr v. Workman*, Addis. (Pa.), 270; *Chapman v. Dodd*, 10 Minn., 350; *Michell v. Williams*, 11 M. & W., 217; *Turner v. Walker*, 3 Gill. & J., 377.

Complaint is made of rulings bearing on the damages. Upon this subject, as on some others, the charge was general and vague, and not sufficient to properly enlighten the jury in regard to their duty. The principles governing

the case cannot be in doubt since the repeated and ample discussions which have taken place, and it cannot be expected that the doctrine will be re-examined and expounded anew in every case in which the court below shall have failed to explain the principles called for with adequate fullness and distinctness.   We do not intend to depart at all from our former expositions. *Chandler v. Allison*, 10 Mich., 460; *Allison v. Chandler*, 11 Mich., 542; *Warren v. Cole*, 15 Mich., 265; *Daily Post Co. v. McArthur*, 16 Mich., 447; *Shaw v. Hoffman*, 21 Mich., 151; *Josselyn v. McAllister*, 22 Mich., 300; *Elliott v. Van Buren*, 33 Mich., 49; *Gilbert v. Kennedy*, 22 Mich., 5, 117; *Welch v. Ware*, 32 Mich., 77; *Druse v. Wheeler*, 22 Mich., 439; *Ganssly v. Perkins*, 30 Mich., 492; *Elliott v. Herz*, 29 Mich., 202; *Brushaber v. Stegemann*, 22 Mich., 266; *Scripps v. Reilly*, 38 Mich., 10; *Raynor v. Nims.* 37 Mich., 34.

We may observe in general terms that the elements of damage were the expense of, the plaintiff, if any, in and about the prosecution complained of to protect himself; his loss of time; his deprivation of liberty and the loss of the society of his family; the injury to his fame; personal mortification and the smart and injury of the malicious arts and acts and oppression of the parties. It was due to the jury to explain to them their province in regard to damages and the grounds upon which they might make allowance, and to call their attention to the principles proper to guide their discretion.

Some special importance seems to have been attached to the circumstance that the first count contained a charge of conspiracy.

In very ancient times all actions for malicious prosecution were laid, where two or more defendants were involved, with a charge of conspiracy, and this practice is supposed to have been adopted from analogy to the statutory form of the old writ of conspiracy.   But the early practice has been long obsolete.   The action is

not for conspiracy, but is simply an action on the case. The gist of it is not the conspiracy, but the damage to the plaintiff by the wrongful acts of the defendants; and this is equally actionable whether it be the result of conspiracy or not. As matter of pleading the charge of conspiracy is mere surplusage and only entitled to be looked at as matter of aggravation, and the insertion of the averment of it does not change the nature of the action at all. It is still an action on the case and to be tried and disposed of accordingly. 2 Selw. N. P., 1062; 2 Saund. Pl. & Ev., 320, note; *Savile v. Roberts*, 1 Ld. Raym., 374; *Tappan v. Powers*, 2 Hall (N. Y.), 277; *Parker v. Huntington*, 2 Gray, 124; *Herron v. Hughes*, 25 Cal., 555; *Hinchman v. Richie*, Brightly (Penn.), 143; *Page v. Parker*, 40 N. H., 66, 67; 2 Chitty Plead. (16th ed.), 498. That in point of fact there was a conspiracy would be competent to be proved without any charge of it, and satisfactory evidence of it would be ground for letting in the acts and doings of each against both.

Wherever two or more conspire together to commit an actionable wrong, everything said, done or written by any one of them in the execution or furtherance of their common purpose is deemed to be so said, done or written by every one and is a relevant fact as against each; but relations of what is past are not relevant as such as against any except those who make them or are present when they are made. Before admitting the sayings or doings of one as the sayings or doings of all, the judge must be satisfied that apart from them there are *prima facie* grounds for believing in the existence of the conspiracy. 2 Wharton's Evid., §§ 1205, 1206; *Beebe v. Knapp*, 28 Mich., 53; *Waterbury v. Sturtevant*, 18 Wend., 353; *Cuyler v. McCartney*, 40 N. Y., 221; *Lincoln v. Claflin*, 7 Wall., 132; *Nicholls v. Dowding and Kemp.* 1 Stark., 81; Stephen's Digest of Evidence, Art. 4.

The record contains nearly sixty charges of error, and a great many are based on exceptions against rulings admitting or rejecting evidence. Of these a large

number are without any merit. Some however, must be deemed well founded under the shape the controversy took. *John v. Bridgman,* 27 Ohio St., 22, and other cases. For the most part they seem to have arisen from the want of proper attention to the precise grounds of the action and the real issues in the cause.

There appears to have been considerable confusion concerning the theory of the action, and consequently in regard to precisely what matters might be proved, and if provable, then in what way. This supposition springs from a careful study of the whole record, but a single incident is expressive. The bill of exceptions shows that testimony understood as tending to prove that there was probable cause, was from time to time offered by the defense and excluded on the plaintiff's objection, and that at a later stage the plaintiff's counsel announced that all such objections were withdrawn. The case fails to show that this action was either in such time or so explicit as to fully remedy the mischief caused by the exclusions.

No attempt has been made to pass on each allegation of error. In view of the mode in which the action was tried and the way in which it was submitted to the jury it has appeared evident that a new trial must take place, and that in conducting it the case would have to be looked at in a different aspect and under changed lights. It has seemed expedient therefore to consider the case somewhat at large rather than seek to notice the proceedings item by item. Some of the inaccuracies apparent would seem to have arisen from inadvertence and are not likely to be repeated, and there is reason to suppose that the same questions of evidence will not come up again, or if they should, not in the shape they now bear.

Before dismissing the case one other feature may be noticed. The fact that Hamilton counseled with Dunning and received his legal assistance seems to be relied on as affording a justification for Hamilton. Smith's

case rests upon a theory and asserts a state of facts which if true can be reconciled only with the notion that Dunning and Hamilton were willful and corrupt joint wrong doers, and not that Hamilton was merely Dunning's client and Dunning simply legal adviser for Hamilton. Smith's case is that Hamilton and Dunning were agreed in bringing, and for a bad purpose, a prosecution both knew to be groundless, and if this be true, then Hamilton could not make Dunning's advice matter of justification. *First Nat. Bank of Sturgis v. Reed*, 36 Mich., 263.

On the other hand, if the theory and state of facts asserted by Smith are not true,—if the case he insists upon fails in evidence, then the action must fall to the ground without regard to any claim by Hamilton to be shielded from liability by advice received from Dunning. The point is immaterial. *Stansbury v. Fogle*, 37 Md., 369; *Weston v. Beeman*, 27 L. J. Exch., 57; *Glascock v. Bridges*, 15 La. Ann., 672.

The judgment must be reversed with costs, and a new trial granted.

The other Justices concurred.